Supreme Court.    Kings General Term, May, 1857.    *S. B. Strong*, *Birdseye* and *Emott*, Justices.

## The People *v.* Joseph Jackson.

On the trial of an indictment for rape it is not competent, on the part of the defence, to prove acts of illicit sexual intercourse between the prosecutrix and persons other than the defendant, although the prosecutrix had previously been asked, on her cross-examination, in relation to such illicit acts, and had denied them (*a*). (This case overrules *The People* v. *Abbott*, 19 *Wend.*, 192.)

Form of an indictment for rape.

This was a *certiorari* to the Kings Oyer and Terminer, in which court the prisoner had been convicted, before S. B. Strong, one of the justices of this court, and Samuel D. Morris, county judge, and the justices of the Sessions.

The indictment was as follows :

*Kings County, ss :*

The jurors of the people of the State of New-York, in and for the county of Kings, upon their oath, present : That Joseph Jackson and John Dixon, now or late of the city of Brooklyn, in the county of Kings aforesaid, on the twenty-third day of August, in the year of our Lord one thousand eight hundred and fifty-six, at the town of Gravesend and in the county of Kings aforesaid, in and upon the body of Catharine Sullivan, a woman of the age of ten years and upwards, in the peace of God and of the said people, then and there being, with force and arms did feloniously make

(*a*) In favor of admitting such evidence, *vide The People* v. *Abbott* (19 *Wend.*, 192); *Rex* v. *Barker* (3 *Carr. & Payne*, 589); *Rex* v. *Martin* (5 *id.*, 562; 2 *Mood. & R.*, 512). Against it, *Rex* v. *Hodgson* (*Russ. & R. C. C.*, 211); *Rex* v. *Clark* (2 *Stark.*, 243); *Regina* v. *Clay* (3 *Cox C. C.*, 146); *The State* v. *Jefferson* (6 *Iredell*, 305); *Camp* v. *The State* (3 *Kelly*, 417); *Rosc. Cr. Ev.*, 97, 97, 863; 3 *Greenl. Ev.*, 214; 1 *Phil. Ev.*, 176, 7 *Am. ed.*; 1 *Cow. & Hill's Notes*, 458, *note* 340; 1 *Stark. Ev.*, 700; 1 *Ch. Cr. L.*, 812; 1 *Russ. on Cr.*, 690.

an assault, and her, the said Catharine Sullivan, did then and there, wickedly and feloniously and against her will, forcibly ravish and carnally and unlawfully know, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

R. C. UNDERHILL,

*District Attorney.*

The prisoner pleaded not guilty.

On the trial it appeared that Catharine Sullivan, the prosecutrix, embarked from Liverpool, on board the ship City of Brooklyn, for New-York, in July, 1856; that she arrived in New-York on or about the 20th day of August, 1856.

The said Catharine Sullivan was sworn and testified on behalf of the people. On her cross-examination, among other things, she was asked, by the counsel for the defendant, whether, during her passage from Liverpool to New-York, above stated, she had sexual intercourse with one Dr. Mason, a passenger on said ship, during said voyage, and she denied, in the most positive and unqualified terms, that she ever had sexual intercourse with said Dr. Mason.

During the progress of the trial, the counsel for the defence offered to prove particular acts of illicit sexual intercourse between the said prosecutrix and the said Dr. Mason, during the aforesaid voyage from Liverpool to New-York. The district attorney objected to any proof of particular acts of illicit intercourse between the prosecutrix and other persons, or any other person than the defendant. The court decided that the defence might prove the general bad character of the prosecutrix for chastity, but that evidence of particular acts of illicit intercourse between the prosecutrix and any other individual except the defendant could not be given in evidence. The court accordingly refused to allow the evi-

The People *v*. Jackson.

dence to be given, to which said decision the counsel for the defendant excepted.

The jury found the prisoner guilty.

*John G. Schumaker* (District Attorney), for the people.

I. The defendant may give evidence of the prosecutrix's notoriously bad character for want of chastity, or that she had before been connected, with her consent, with defendant; but he cannot give evidence of any other particular facts to impeach her chastity. (*Regina* v. *Clay*, 5 *Cox C. C.*, 146, 1851; *State* v. *Jefferson*, 6 *Iredell*, 305, 1846; *Rex* v. *Hodgson*, *Russ. & Ry. C. C.*, 211; *Rex* v. *Clark*, 2 *Stark.*, 243; *R.* v. *Barker*, 3 *Carr. & Payne*, 589; *R.* v. *Martin*, 6 *id.*, 562; *Camp* v. *State*, 3 *Kelly*, 417; *Geo. R.*, 1847; *Jackson* v. *Lewis*, 13 *John.*, 504.) 1. The Court of Errors have decided in the case of *Bakeman* v. *Rose* (18 *Wend.*, 153, 154, 155), "That the credit of a witness should only be impeached by proof of his moral character generally, and not by proof of a particular immoral act." Senator Tracy says that "This principle is concurred in by all elementary writers upon evidence, and has been maintained by courts everywhere, in almost every variety of form in which it has been presented for their decision." 2. The witness, Catharine Sullivan, was asked in relation to a particular act of unchastity upon her cross-examination; and afterwards such particular act was offered to be proven by the defendant.

II. Any question answered by the girl Sullivan, on her cross-examination, in relation to any particular act touching her chastity, is immaterial to the issue and irrelevant, and her answer must be taken as conclusive. (*Stark. Ev.*, 146, 147, *pt.* 2; 1 *Phil. Ev.*, 229, *ch. 7 and* 8; *Swift's Ev.*, 143, 144.)

III. "The inquiry as to any particular immoral conduct is not admissible against a witness," is an old rule of law,

and has been decided in this state, England, North Carolina, Georgia and Kentucky. Chief Justice Savage, in *Bakeman* v. *Rose* (14 *Wend.*), says : "That this point was expressly decided in this state twenty years before, in the case of *Jackson* v. *Lewis* (13 *John.*)." Chief Justice Thompson also says : "That such rule has not ever been departed from, and a discussion of it is unnecessary."

IV. The case of *The People* v. *Abbott* does not sustain the offer of the defendant to show particular acts. (*People* v. *Abbott*, 19 *Wend.*, 198.) The same question addressed to Mercy Foster, and ruled irrelevant and sustained by Justice Cowen, "to wit, as to immoral and improper intercourse between prosecutrix and prisoner," was the same question exactly put in this case to the witness Newell. A man is supposed capable of defending his general character, but cannot be prepared to defend himself against particular charges.

*Alexander Hadden,* for the prisoner,

Relied on *The People* v. *Abbott* (19 *Wend.*, 192).

*By the Court,* S. B. STRONG, J.— The defendant was tried at the Court of Oyer and Terminer held in the county of Kings on an indictment against him and another for a rape upon Catharine Sullivan. The trial occupied eight days, and resulted in his conviction. The complainant was asked, on her cross-examination by the counsel for the accused, whether upon her passage from Liverpool to New-York, previous to the alleged outrage, she had illicit sexual intercourse with a fellow passenger, to which she answered unhesitatingly that she had not. Subsequently the counsel for the accused offered to prove by another witness particular acts of such illicit sexual intercourse between the complainant and the same passenger during such voyage. The district attorney objected to the admission of the proposed evidence ; and the

court decided that the defendant might prove the general bad character of the prosecutrix for chastity, but that evidence of particular acts of unchaste conduct by her, with any person other than the accused, at any period previous to their intercourse, was inadmissible, and rejected the evidence as to such alleged acts offered in behalf of the accused, to which his counsel excepted. The only question raised by the bill of exceptions is whether this rejection of the proposed evidence was proper.

Although the prosecutrix in such cases is the person aggrieved, yet she is upon the trial simply a witness between the people and the accused, and the rules of evidence relative to ordinary witnesses are, with two exceptions resulting from the peculiarity of the complaint, which I shall presently notice, applicable to her. Generally the conduct of a witness in matters disconnected from the subject of the trial, being irrelevant, cannot be given in evidence. The objections to admitting such evidence are, that it raises collateral issues, and that the party against whom it may be offered would generally be taken by surprise, and not be prepared to meet it. It is very desirable that the inquiries upon a trial should be confined to the issues actually joined between the parties. They attend to try those only; the attention of the jury is or should be exclusively directed to them, and not diverted to other and irrelevant matters which have a tendency to confuse their minds, and an investigation into collateral matters would protract issues into inconvenient and intolerable length. The issues in civil cases, owing to modern innovations, are very numerous in most instances, and ought not to be increased by a relaxation of the rules of evidence. The system of special pleading which has been recently almost practically abolished, was admirably adapted to raise, and to confine the parties to a few specific and necessary issues. The consequence of the abandonment of that system in civil cases has been that legal investigations have become very burdensome to courts and juries, and there are

numerous delays which in many instances operate disastrously to the ends of justice. Fortunately however, no essential changes in the modes of procedure in criminal cases have yet been adopted. The issue in those cases is simply whether the accused is guilty of the crime imputed to him in the indictment; whatever tends to prove his guilt or innocence is relevant, all else is foreign to the investigation and inadmissible.

If there should be anything to require the rejection of the proposed evidence, or to diminish the force of what is actually adduced, it may be proved, provided it does not raise or tender a collateral issue. Thus it may be proved that a proposed witness has been convicted of an infamous offence by producing the record. That raises no collateral issue of fact, as the record is conclusive, and there can be no further inquiry. But it is not competent to prove that the witness has in fact committed a crime if he has not been convicted, although the actual perpetration of the crime is what renders him unworthy of belief. That, if permitted, might raise a collateral issue for trial. So, too, a witness may be asked if he has not perpetrated some offence, or been guilty of some moral obliquity, which would if true impair the weight of his evidence. He may indeed refuse to answer whether he has been guilty of an act which would render him liable to an indictment or a prosecution for a penalty, or of any act disconnected with the main transaction which would have a tendency to degrade him. But he may confess either, at his option, and the evidence would be admissible. That would not, however, raise any issue for trial, as whatsoever his answer might be the party asking the question could not controvert it. A witness may also be asked whether he has previously made a varied or conflicting statement as to some material fact, and should he deny that, he might be contradicted. That would, however, have reference to a direct rather than a collateral issue. As to any discrepant statements of the witness in reference to matters foreign to the issue on trial,

The People *v.* Jackson.

although he might be interrogated as to them for the purpose of estimating his credibility, yet the examiner would be precluded from controverting his answers.

There can be no doubt but that, in ordinary cases, an inquiry, addressed to any other than the assailed witness, as to any particular act derogatory to his character, or as to any specific blemish in his reputation, should be excluded. It was contended on the argument, however, that the rule had been relaxed in reference to the testimony of the prosecution in trials for rape, and in such cases the door had been opened sufficiently wide to admit the evidence offered and rejected in the court below. It is certainly right that the testimony of the female preferring the complaint should be subjected to the strictest scrutiny compatible with the due administration of justice; she is a necessary and generally the sole witness of the transaction. Experience has shown that the charge is frequently unfounded and instituted from impure motives. It is hard to meet the testimony of a cunning and unprincipled woman in reference to what is alleged to have taken place in the presence only of herself and of the accused, whose mouth is of course closed. It is therefore deemed essential that the charge should be supported by attending considerations or circumstances, such as that the witness is of good fame; that she presently disclosed the offence and made exertions for the detection and prosecution of the offender; that she exhibited marks and signs of the injury, and that the alleged outrage was perpetrated in a private or secluded place. It is absolutely necessary to the constitution of the offence that the outraged female should have resisted to the extent of her power until the crime was consummated, unless such resistance was prevented by threats and intimidation. As the complainants more frequently pervert the truth and are harder to be met in reference to this particular than as to any other allegation, courts have very properly allowed to the defendants considerable latitude in proving contradictory circumstances.

They are permitted to prove that the general character of the prosecutrix for chastity is bad, or that she had previously had sexual intercourse with the accused. In either case, the probability of any considerable resistance would be very slight. No great injustice can result from these relaxations of the ordinary rules of evidence. If character is unjustly assailed it can ordinarily be readily fortified, and the accused would generally find it very difficult to support an unfounded allegation of sexual intercourse between himself and the complainant, and particularly when opposed to her positive oath; and besides, the public prosecutor might, when he should deem it necessary, make timely exertions to meet such grounds of defence. But the reasons for the admission and against the rejection of evidence as to the general character of the prosecutrix for chastity, and her illicit previous intercourse with the accused, are inapplicable to the proof of sexual intercourse between her and another, which was offered and rejected in this case. If the allowance by her of such intercourse resulted from general wantonness, her character in that respect would probably have been bad, and that could have been proved; at any rate, such would be the result in most cases, as the bad report is generally even with the evil practice; but if the complainant had yielded her virtue to the entreaties of one to whom she was attached and to whom she was engaged to be married, and if in this instance she yielded at all it was under such circumstances, I am not prepared to say that the incident would furnish any ground for an inference that she did not resist to the utmost an outrage from one who was comparatively a stranger to her. In any case, a single aberration from virtue, in one whose general character for chastity is otherwise unimpeachable, would raise so slight an inference, if any, of non-resistance to a brutal outrage from a person, or indeed any one except him to whom she had previously yielded, that it would not justify a departure from the ordinary rules of evidence. Besides, if proof of particular instances should

be admissible, rebutting evidence would be allowable, and thus there might be one or more collateral issues to occupy the time and divert the attention of the jury. Such would be the evils if the prosecution could require previous and timely notice of the particulars of the intended attack upon the conduct of the complainant; but as no such notice can be exacted, there would be no means of meeting the evidence, often of the dissolute companions of the accused, however mistaken or corrupt it might be, and thus the character of an innocent and greatly abused female might be sacrificed, and the ends of public justice be defeated. The weight of authority is decidedly against the admissibility of such evidence. In *The King* v. *Hodgson* ( *Russ. & Ry. Cr. Cas.*, 211 ) the prisoner's counsel offered a witness to prove that he had sexual intercourse with the complainant about a year before the charge, but Wood, B., who presided at the trial, rejected the evidence. Subsequently, the question as to the admissibility of such evidence was argued before the twelve judges of England, and it was decided by them, unanimously, on the 30th of January, 1812, that the objection to its reception had been properly allowed. In *The King* v. *Clark* ( 2 *Stark.*, 241 ) there was a trial on an indictment for an assault with an intent to commit a rape, before Holroyd, J. The learned judge said that, "in the case of an indictment for a rape, evidence that the woman had a bad character previous to the supposed commission of the offence is admissible, but the defendant cannot go into evidence of particular facts. This is the law upon an indictment for a rape."

Mr. Greenleaf, in his valuable work on evidence ( 3 *Greenlf. Ev.*, § 214), says : "The character of a prosecutrix, on a trial for rape, for chastity may also be impeached, but this must be done by general evidence of her reputation in that respect. Starkie ( *Stark. Ev.*, *part* 4, 1269) says : "The character of the prosecutrix for chastity may be impeached by general evidence; but evidence of particular facts for this purpose is inadmissible." Phillips, in his work on evi-

The People *v.* Jackson.

dence ( *Phil. Ev.*, 222, 223, 3*d ed.*) says : " On an indictment for rape, the woman is not obliged to answer whether, on some former occasion, she had not a criminal connection with other men or with particular individuals, nor is evidence of such criminal intercourse admissible." Other authorities to the same effect are very numerous, and I consider the point to be well settled. It is true that Judge Cowen, in the case of *The People* v. *Abbott* ( 19 *Wend.*, 192 ), disapproves of the rule, strongly sustained as it is by numerous judicial decisions and the opinions of many elementary writers ; but the point was not necessarily raised in that case, as the conviction was reversed on the ground that the Court of General Sessions, before which the trial for a rape had been conducted, had no jurisdiction of the case, and what was said by the learned judge as to the rejection of evidence was a mere *obiter dictum.*

As the proffered evidence in this case was properly rejected, the motion for a new trial must be denied, and the record must be remitted to the Court of Oyer and Terminer, with instructions to sentence the defendant conformably to his conviction.

Proceedings affirmed.